Elliott, J.
This cause was brought to restrain the defendant from crossing the plaintiff’s railway at grade, at a point about four miles south of the city of Denver. The County Judge granted a temporary injunction, which the defendant now moves to dissolve, upon its answer, affidavits, profiles and exhibits, showing the location of the proposed crossing, the plaintiff also presenting similar proofs for the continuance of said injunction.
The determination of this motion requires an examination and construction of the constitution and several statutes of this State relative to railroad crossings; and, also, a consideration of the power of a Court of Chancery to supervise and control the action of railroad corporations in the exercise of certain corporate franchises, in order to prevent them from unduly encroaching upon each other, as well as to secure the rights and protect the safety of the public.
The plaintiff acquired its charter under the general corporation law of 1868; and it is conceded that there was no statute at that time concerning railroad crossings. Nevertheless, the plaintiff took its charter subject to the right of the Legislature at any time to alter, amend,, or repeal the law affecting its rights and franchises. (Revised Statutes 1868, page 122, Sec. 21.)
The first specific legislation relative to railroad crossings is found in the Sessions Laws of 1874, page 223, which seems by the very first section to recognize the right of one road to cross another as an existing right, and also to indicate the kind of crossing.
It commences: “ In all cases where two railroads shall cross each other, every train on approaching such crossing shall come to a full stop immediately before it reaches such crossing,” etc. It is argued with great force that the kind of crossing contemplated by such language was a crossing at grade, and that the requirement of coming to a full stop was to avoid collisions. There would seem to be no necessity for such a requirement, if the crossing referred to by the statute were either over or under grade.
*129 Sec. 3 of said act of 1874 further provides:
“Whenever any railroad company in this State shall have constructed its track, and it shall be necessary for any other company to cross the same with its track, it shall be lawful for such company to do so at any suitable place, so as not to obstruct such track already constructed, and if the parties cannot agree as to the right of way and damages for such crossing, the company desiring to-cross may proceed to secure the right of way for such crossing only by condemnation in the same manner as provided in other cases.”
Difficult as it may be to apply the principles and practice governing condemnation proceedings under the statute of “ Eminent Domain” to the condemnation of a right of way through land already subjected to one appropriation of that kind, it is nevertheless submitted, that the Legislature scarcely contemplated by the foregoing section to limit the operation of the statute to a condemnation of the right of way through the air, or under ground, so as not to obstruct in any degree the track already constructed.
But before undertaking to analyze and determine the meaning and effect of the various words and phrases in this act, let us see what other legislation we have upon the subject:
The constitution adopted in 1876 (Art. 15, Sec. 4,) expressly guarantees: “ Every railroad company shall have the right with its road, to intersect, connect with, or cross any other railroad.” Also the general corporation law of 1877, (Gen. Laws, page 181, sub-title railroads,) urider which defendant was incorporated, provides:
“Every such corporation formed under this act, shall, in addition to the powers hereinbefore conferred, have power * * * * to cross, intersect, or connect its railways with any other railway.” Now, even if the wording of the act of 1874 is susceptible of a construction not implying the right of crossing at grade, it seems to me that the words here employed in the act of 1877, and in the constitution itself, clearly mean a crossing at grade. While there may be a crossing which is not a grade' crossing, yet an intersection of two railroads clearly means an actual cutting of one road by the other. If the word intersect had been used alone, it might be said to indicate the mere con *130 nection of one road with another without a complete crossing; but we have also the words connect with, in the constitution as well as in the statute; so we must say that it was intended by the word intersect to convey some other and different meaning, to give some greater effect than was expressed by the words connect with. It is a sound canon of construction to give some meaning and effect, if possible, to every word of a constitution or of a statute, and generally also words are to receive their usual meaning and signification.
So I have little or no doubt that both the constitution and laws of this State provide for the crossing of one railroad by another at grade, subject only to such restrictions as a court of equity may impose, under the circumstances of each particular case, to prevent improper obstruction and to secure the public safety.
The act of 1874 provides for a railroad crossing when necessary. I think this means that whenever the location of a railroad is such' that in constructing its track from one terminal point to another in pursuance of its charter it encounters the track of another railroad lying between said terminal points, then the necessity for such crossing arises.
Inasmuch as the railroad company is invested with discretion to locate its terminal points within reasonable distance of the place designated in its charter, and to make the alignment of its road with reasonable directness between such terminal points, it follows that the company itself determines both when and where it is necessary to make such crossing, subject, however, to the requirement that the place of crossing shall be suitable so as not to obstruct the track already constructed.
The discretion of the company in selecting such place of crossing is not to be controlled by the mere preference of others, nor should the Court assume to substitute its judgment for that of the company, unless it appears from the facts and circumstances of the case, that the place selected is not suitable, or will obstruct the original company’s track.
We must, therefore, consider what is an unsuitable place of crossing, and what is an obstruction to the track already constructed, within the meaning of the statute. The word obstruct has several meanings, an obstruction may be total, it may be partial in different degrees, from the slightest impediment to the *131 most serious obstacle. How shall we determine the degree of obstruction prohibited by the statute? Undoubtedly the cross ing of one railroad by another at grade at any point would be a partial obstruction, for while the trains of one road were passing that point, the trains of the other could not do so; besides, under the statute, the trains of each must come to a full stop bn approaching such crossing in any event, so the statute cannot mean that the crossing must not cause any obstruction whatever, else it would amount to a prohibition to the right to cross at all.
In general terms, we can only say that the statute intends to prohibit such an obstruction as would be considered unreasonable under the circumstances of the case, or which could be reasonably avoided. To illustrate: If one company were to attempt to cross the road of another at a place where the original company had provided itself with tracks and sidetracks -.for the purpose of switching or storing its rolling stock or other property, or in the immediate vicinity of its workshops or other buildings, so as to prevent or seriously interfere with the use of such premises or buildings, especially if such crossing could be reasonably avoided, or made elsewhere, under such circumstances, I have no doubt a court of equity might properly interfere by injunction to prevent such an unreasonable obstruction. I am not prepared to concede that under our statute the attempted crossing must appear to be altogether wanton or malicious in order to warrant the intervention of the Court.
So, too, I think the Court has a right to exercise control as to the place where one railroad may cross another, to the extent of protecting public safety. If the grounds are of such conformation at and about the proposed place of crossing that approaching trains cannot be readily seen or easily stopped, so that frequent collisions are liable to occur, endangering human life as well as property, the Court might well rest-ain such a crossing as being unsuitable, because dangerous and unsefe, and also as being a very great obstruction within the meaning of the statute. But in a level country, with a- fair view, removed from every avoidable obstruction, it seems to be the law of this State that one railroad company may, whenever necessary, construct its track across the track of another company at grade, and that it may select for itself the place of such crossing.
I am aware that this doctrine may seem a hardship to those *132 interested in the older railroad corporations, but it must be remembered that they have long been the recipients of valuable privileges, including this very power to acquire the right of way from others without their consent. The State grants these superior privileges to railroad corporations to hold and enjoy, not for their own advantage alone, but in consideration for such privileges they are bound to exercise them reasonably for the benefit of the public; and since the public may be benefitted by the organization and operation of other railroads, therefore, every railroad company must be held to have acquired its right of way subservient to the power of other railroads, when duly incorporated, to acquire similar rights; otherwise we should have monopoly, which the law abhors. The power to acquire right of way is an attribute of sovereignty, in the granting of which to corporations, the State does not entirely divest itself of authority, but retains sufficient control to prevent injurious results to its own citizens, whether natural persons or other corporations.
E. 0. Wolcott and L. K. Bass, for plaintiffs.
Wells, Smith & Macon, for defendants.
From the papers read and exhibited at this hearing, and from a personal inspection of the premises at and about the proposed place of crossing, I find that the country for miles around is comparatively level, that both roads can stop their trains on tracks of very light grade, within a short distance of the crossing, with a full view from all directions.
The place is removed about two miles from the plaintiff’s work shops, and there are no considerable impediments to interfere with passing trains.
The injunction heretofore granted will be dissolved.